FOWLER STATE BANK, OF FOWLER, KAN., v. WHITE.

RIDENOUR–BAKER GROCERY CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. July 22, 1912.)

Nos. 3,763, 3,764.

1. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE INSOLVENCY.

A bank, which held a demand note of a retail grocer, who was in fact insolvent, demanded payment, and a few days later took a new note, secured by a chattel mortgage on the debtor's stock. Seven days afterward it made a contract with another merchant to take enough goods from the stock to satisfy its claim, and this was done, with the debtor's consent. The price paid was 80 per cent. of the invoice price of the goods, which sum the bank received. It had also within a few days protested small checks drawn on it by the debtor, and returned drafts sent to it for collection as uncollectible. On the day after the goods were taken, an involuntary petition was filed against the debtor, and he was adjudicated a bankrupt. Held, that the bank had reasonable cause to believe that the bankrupt was insolvent when it received the payment, and that the sum was recoverable by his trustee as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE INSOLVENCY.

A creditor of an insolvent merchant, which took a chattel mortgage on his stock three days before his bankruptcy, and two days later took possession and sold and removed goods sufficient to pay its claim, had reasonable cause to believe that the debtor was insolvent, and the amount it received was recoverable by his trustee as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250–258; Dec. Dig. § 166.*]

Appeals from the District Court of the United States for the District of Kansas.

Suits in equity by Warren White, trustee in bankruptcy of C. E. Lockwood, against the Fowler State Bank, of Fowler, Kan., and against the Ridenour-Baker Grocery Company. Decrees for complainant, and defendants appeal. Affirmed.

Alexander New, Edwin A. Krauthoff, E. J. Geittman, Harry J. Bone and Chas. S. Briggs, for appellants.

W. G. Fairchild and H. S. Lewis, for appellee.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WILLARD, District Judge. These appeals are prosecuted from judgments rendered in the District Court of the United States for the District of Kansas, in favor of Warren White, trustee in bankruptcy of C. E. Lockwood, and against the Ridenour-Baker Grocery Company for $389.93, and against the Fowler State Bank, of Fowler, Kan., in favor of the same plaintiff, for $927.83. The judgments are predicated upon a finding by the trial court that the appellants above named received a preference under section 60, cls. "a," "b," of the Bankruptcy Act, to the extent of the respective amounts above named. The issues in both cases being practically the same, the suits were, upon stipulation of the parties, consolidated for trial, and, likewise by stipulation of parties, consolidated on appeal.

In the month of April, 1909, C. E. Lockwood opened a grocery store in the city of Fowler, Kan., and continued to conduct said store until an involuntary petition in bankruptcy was filed against him on the 14th day of January, 1910. He opened an account with the Fowler State Bank about the time he began to do business, making a deposit in the bank which was subject to his check. During the latter part of November, 1909, Lockwood borrowed from the Fowler State Bank, on his demand note, $874.46. On January 1, 1910, the bank made demand on Lockwood that the note be paid, or at least be reduced. Apparently Lockwood was unable to take up the note, so on January 6, 1910, he gave the bank a new note for $1,045, which was to cover the old note of November 24, 1909, for $874.46, and an overdraft of $170.54, making a total of $1,045. This note for $1,045, dated January 6, 1910, was secured by chattel mortgage on Lockwood's stock of goods.

A few days after F. D. Morrison, cashier of the Fowler State Bank, requested that Lockwood make some arrangement to take care of the account, and said that they would have to foreclose their mortgage unless some of the goods could be sold to a merchant in town. A little later Morrison made a contract with Linn Frazier, who was in the grocery business, by which Frazier agreed to take from Lockwood's stock enough goods to satisfy the bank's claim; Frazier paying for the goods 80 per cent. of their cost price. Lockwood was notified of this arrangement and assented to it. About the 13th day of January, one day before the petition in bankruptcy was filed, Frazier took from Lockwood's stock goods which were invoiced at $1,197, and on January 15th he paid 80 per cent. of this, as follows: $957.60 to the Fowler State Bank, and $29.60 to Lockwood. The bank's debt having thus been paid in full, it thereupon surrendered to Lockwood his note and mortgage.

[1] The claims of the bank are: (1) That there was no evidence of insolvency at the time the alleged preference was given; and (2) that the bank did not have reasonable cause to believe that Lockwood was insolvent.

Lockwood testified that his assets at all times in January were about $4,000, and his liabilities about $6,000. An analysis of all the testimony in the case sufficiently shows that his testimony was substan-

tially accurate. It would serve no useful purpose to relate such evidence.

Upon the other question, as to the bank's knowledge of Lockwood's condition, it appears that Morrison, the cashier, when he went to Frazier to get him to take the property, told Frazier that Lockwood was in hard circumstances. A check of Lockwood, drawn on the Fowler State Bank for $25 on December 29, 1909, in favor of the Standard Oil Company was protested by Morrison himself as notary public on January 5, 1910. On the same day he protested another check of Lockwood for $11.77, drawn in favor of the Loose-Wiles Biscuit Company. That company afterwards, on January 11th, made a draft to the order of the Fowler State Bank on Lockwood for the amount of the check. This was returned uncollected, with the following notation thereon: "No show to collect. F. D. M." Other checks and drafts were returned by the bank about that time. In addition to all this, the transaction was very unusual, and was sufficient to put Morrison upon inquiry as to the financial condition of Lockwood.

[2] So far as the question of insolvency is concerned, the case of the Ridenour-Baker Grocery Company is the same as that of the Fowler State Bank. Hudson, the agent of this company, was at Fowler on January 11, 1910. He then took a chattel mortgage on all of Lockwood's stock. He knew at that time of the prior mortgage to the Fowler Bank. He returned to Fowler on January 13th, and on Thursday 14th took possession of the store and sold goods therefrom Thursday afternoon, Friday, and Saturday forenoon. In addition to selling goods over the counter, he loaded two wagons out of the stock and sent these out of town by night. At that time only $100 of the company's claim was due. On January 12, 1910, a letter was sent from Fowler to the Grocery Company at Kansas City, notifying it that Lockwood's written consent to bankruptcy had been secured. The facts above recited are sufficient to show that the Grocery Company had reasonable cause to believe that Lockwood was insolvent.

Some claim is made in the brief to the effect that the judgment against the company for $389.93 is erroneous, because there is no evidence of the amount of goods which Hudson took away, nor of the amount of money which he received while he was selling in the store. The testimony upon this point, however, is ample to justify the finding of the court below to the effect that the Grocery Company had received enough to pay its claim in full, and the judgment against it was for the amount of the claim.

The decree of the court below in each case is affirmed, with costs.